**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| RICARDO AVILA HERRERA, <br><br> Plaintiff, <br> v. <br><br> TRANSUNION RISK AND ALTERNATIVE DATA SOLUTIONS, INC., <br><br> Defendant. | Case No.: 8:26-cv-01106 <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Avila Ricardo Herrera ("Plaintiff"), by and through his counsel brings the following Complaint against Defendant TransUnion Risk And Alternative Data Solutions, Inc. ("TRADS" or "Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C.§§ 1681, *et seq*., and states as follows: This action arises out of TRADS' publication of inaccurate information and sale of a consumer report to non-party Checkr, Inc. ("Checkr") which was then resold and republished to Plaintiff's employer, which falsely stated Plaintiff's Social Security number ("SSN") was unverifiable and portrayed him as a fraudster. Alternatively, TRADS was negligent in publishing inaccurate information to Checkr, which in turn republished and resold that information in a background check report in response to a request for the same by Plaintiff's employer. TRADS knew or had reason to know that Checkr requested information of it about Plaintiff for the purpose of reselling

that information to a user like Plaintiff's employer. TRADS' negligent publication of the inaccurate information to Checkr led to Checkr reporting that Plaintiff's SSN was unverifiable.

## INTRODUCTION

1.    This is an individual action for damages, costs, and attorney's fees brought against TRADS pursuant to the FCRA, 15 U.S.C. §§ 1681, *et seq*.

2.    TRADS is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.    As part of its consumer reports, TRADS also provides a SSN trace verification, which verifies if the SSN provided matches the consumer's name and if the consumer is permitted to work in the United States.

4.    Regardless of the results of the rest of the background check, TRADS knows that an employer will almost always terminate a consumer's employment if TRADS is unable to verify a consumer's SSN.

5.    TRADS falsely published and sold to Checkr in response to a request from Checkr for a SSN verification that Plaintiff's SSN was unverifiable, making it appear as if Plaintiff did not have a valid SSN.

6.    TRADS reporting is grossly inaccurate and untrue, Plaintiff has a

verified and valid SSN.

7.     TRADS negligently sold a consumer report containing inaccurate information purporting to be about Plaintiff to Checkr.

8.     TRADS knew or had reason to know that Checkr would then rely upon that information and resell the same to Plaintiff's employer.

9.     Due to Checkr's consumer report, which included information from TRADS' consumer report, specifically that Plaintiff's SSN was unverifiable, Plaintiff's then employer, Uber, terminated his employment.

10.     TRADS' inaccurate reporting could have easily been avoided had Defendant performed a cursory SSN verification, including on the Social Security Administration's ("SSA") website, prior to publishing that Plaintiff's SSN was unverifiable to Checkr who in turn republished the same to Plaintiff's employer.

11.     Had TRADS performed even a cursory review of the available records, it would have discovered that Plaintiff has a valid and verifiable SSN.

12.     TRADS does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. TRADS' failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

13.     TRADS committed these violations pursuant to its standard policies and practices, which harm innocent employed consumers or those seeking

employment by prejudicing their employers with information which makes it appear that the consumer is a fraudster or is attempting to work illegally in the country.

14.   TRADS' inaccurate reports cost Plaintiff his existing job. TRADS' inaccurate reporting left him without the income he needed to meet his financial obligations.

15.   As a result of TRADS' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities and wages; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

16.   As a result of TRADS' conduct, action, and inaction, Plaintiff brings claims against TRADS for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and failing to correct the disputed information on Plaintiff's background check, in violation of the FCRA, 15 U.S.C. § 1681i.

17.   Alternatively, TRADS was negligent in that it owed a duty of care,

which it breached, and ultimately caused Plaintiff's damages.

18.    Alternatively, as a result of TRADS' negligence, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities and wages; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## PARTIES

19.    Plaintiff is a natural person who resides in Tampa, Florida, within the confines of Hillsborough County, Florida. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

20.    Defendant TRADS is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661. TRADS is authorized to do business in the State of Florida, including within this District.

21.    TRADS is a "consumer reporting agency" ("CRA") as defined in 15 U.S.C. § 1681a(f). TRADS is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) for employment

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

22.    Among other things, TRADS sells consumer reports to employers directly or through other CRAs for their use in deciding whether to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

## JURISDICTION AND VENUE

23.    Jurisdiction of this court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

24.    TRADS transacts business in this District; TRADS purposefully avails itself of the protections of this District; and TRADS regularly directs business at this District, such that personal jurisdiction is established.

25.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00. Plaintiff is a citizen of the State of Florida. TRADS is a limited liability corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

26.    The Court has supplemental jurisdiction over the state law claims that Plaintiff has brought against TRADS pursuant to 28 U.S.C. § 1367. The causes of action alleged by Plaintiff under state law arises out of a common nucleus of

operative fact with respect to Plaintiff's claims against TRADS under the FCRA. Accordingly, supplemental jurisdiction is established.

27.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATUTORY BACKGROUND

28.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

29.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

30.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

31.    Consumer reports that contain factually incorrect information are neither maximally accurate nor fair to the consumers who are the subjects of such

reports.

32.     Consumer reports that contain materially misleading information that portray a consumer as a fraudster are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTION FOR CURRENT AND PROSPECTIVE EMPLOYEES

33.     Despite its name, the FCRA covers more than just credit reporting, it also regulates employment background check consumer reports like the ones TRADS prepared in Plaintiff's name.

34.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

35.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like TRADS, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

36.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

37.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the

information concerning the individual about whom the report relates."

38.     Under 15 U.S.C. § 1681i, consumer reporting agencies must conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.

39.     TRADS disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## TRADS' ILLEGAL BUSINESS PRACTICES

40.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

41.     As summarized in a recent report by the Consumer Financial Protection Bureau, a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.

42.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.

43.     Often times, a background check company also conducts an SSN Trace verification, a search used to verify the validity of a consumer's SSN and whether it matches the name the consumer provided.

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

44.     This SSN verification procedure is generally created by running automated searches through giant databases of aggregated SSN data. The reports are created and disseminated with little to no manual, in-person review, and the records are rarely directly reviewed in creating background checks or verifying a consumer's SSN.

45.     Upon information and belief, TRADS does not verify SSN information directly with the SSA and, instead, relies solely on information available on third party commercial databases to verify SSNs.

46.     TRADS is well aware that an employer will not hire a consumer if TRADS is unable to verify that consumer's SSN.

47.     Given that TRADS is in the business of selling background checks, TRADS should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

48.     TRADS places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for TRADS to produce reports containing information that is inaccurate and incomplete than it is for TRADS to exert proper quality control over the reports prior to their being provided to TRADS' customers.

49.     TRADS reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

50. TRADS charges its customers the same price for reports in which it cannot verify a consumer's SSN as it does for reports in which it can.

51. Appropriate quality control review of the consumer's report(s) TRADS sold and published to non-party Checkr prior to selling and publishing them would have made clear that TRADS was inaccurately reporting that Plaintiff's SSN was unverifiable.

52. As a provider of background check reports, TRADS should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTUAL ALLEGATIONS

### PLAINTIFF WAS EMPLOYED BY UBER

53. Beginning in or around 2024, Plaintiff began working for Uber as a driver to support himself.

54. Plaintiff was able to earn around $1,000 to $1,500 per week while working as a driver with Uber.

55. Plaintiff relied on Uber as his primary source of income to cover all his cost of living expenses.

56. Plaintiff further relied on his Uber earnings to afford car and insurance payments.

57. Plaintiff enjoyed the flexibility, financial security, and earning potential that came with working for Uber.

## UBER ORDERED A BACKGROUND CHECK REPORT ABOUT PLAINTIFF

58. Uber has contracted with Checkr to conduct background checks on its employees and prospective employees.

59. Checkr has contracted with TRADS to provide information about employees and prospective employees, which includes but is not limited to information pertaining to SSN verification.

60. On or about April 4, 2025, Uber ordered employment background check consumer report concerning Plaintiff from Checkr.

61. In or around April 2025, in accordance with its procedures, Checkr ordered a consumer report about Plaintiff, including information about Plaintiff's SSN, from TRADS.

62. TRADS knew or had reason to know that Checkr requested information about Plaintiff to be resold to Plaintiff's current or prospective employer.

63. In or around April 2025, in accordance with its procedures, TRADS sold a consumer report to Checkr inclusive of an SSN verification about Plaintiff, who then resold and published the same in a consumer report to Uber.

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

## TRADS PUBLISHED AN INACCURATE BACKGROUND CHECK REPORT

64.    Within that consumer report, TRADS negligently published inaccurate information about Plaintiff.

65.    On or about April 28, 2025, Checkr relied upon the information sold by TRADS to it and published inaccurate information about Plaintiff to Uber.

66.    Specifically, Checkr's employment background check consumer report about Plaintiff included a flagrantly inaccurate and stigmatizing representation that Plaintiff's SSN was unverifiable.

67.    An "unverifiable" SSN suggests that some sort of fraud is at play.

68.    TRADS' reporting about Plaintiff made it appear as though Plaintiff was committing some sort of fraud and/or intentionally misrepresenting his SSN.

69.    In fact, the very reason for SSN verification is to prevent fraud.

70.    The unverifiable status of Plaintiff's SSN reported by TRADS is inaccurate.

71.    Plaintiff has a valid SSN that had worked for Uber previously.

72.    A cursory query of the SSA's online tool, which was available to TRADS, would have confirmed that Plaintiff does in fact have a valid and verifiable SSN.

73.    Unfortunately, TRADS relied exclusively upon information generated from a third-party commercial database that frequently fails to obtain accurate

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

information regarding consumer's SSNs.

74.    Upon information and belief, TRADS does not have any procedures to verify a consumer's SSN if its commercial database fails to do so.

75.    Stated otherwise, when TRADS' commercial database returns a result of "unverifiable," TRADS fails to have any additional procedures in place to verify the SSN with another source, including verifying with the SSA.

76.    The sole reason TRADS reported that Plaintiff did not have a valid SSN was that TRADS failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Checkr which in turn published the same to Uber.

77.    Had TRADS followed the most basic of reasonable procedures, it would have discovered that Plaintiff's SSN was indeed valid and verifiable.

78.    In preparing and selling a consumer report about Plaintiff, wherein TRADS published to Checkr which in turn published to Uber, inaccurate information about Plaintiff, TRADS failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of §1681e(b).

79.    Alternatively, in preparing and selling a consumer report about Plaintiff, wherein TRADS published to Checkr for resale to Plaintiff's current employer that Plaintiff's SSN was unverifiable, TRADS breached its duty of care and caused Plaintiff's employers to rescind his driving privileges.

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

## UBER SUSPENDS PLAINTIFF'S EMPLOYMENT

80.    On or about April 28, 2025, Plaintiff received a message from Uber that Checkr was unable to confirm his identity and specifically pointed to issues with his SSN.

81.    Uber further explained that Plaintiff would be unable to continue driving with Uber due to the inaccurate reporting.

82.    Checkr suspended Plaintiff's consumer report due to TRADS' inaccurate and false representation that Plaintiff did not have a valid or verifiable SSN.

83.    Plaintiff has a valid and verifiable SSN.

84.    The information that Plaintiff's consumer report was suspended was published to Checkr by TRADS.

85.    The communication that Plaintiff's consumer report was suspended communicates to Checkr that Plaintiff's SSN cannot be verified.

86.    The communication that Plaintiff's SSN cannot be verified gives the misleading impression that Plaintiff is a fraudster.

87.    Plaintiff reasonably believes that Uber suspended his employment as a direct result of TRADS' publication of inaccurate information to Checkr which relied upon and resold the same to Uber about Plaintiff – specifically that Plaintiff's SSN was not verifiable.

88. Specifically, TRADS reported Plaintiff did not have a valid SSN despite contradictory information maintained by the SSA and easily accessible via an online portal. Those records were available to TRADS prior to TRADS publishing Plaintiff's consumer report to Checkr which then relied upon and resold the information to Uber, but TRADS failed to obtain or perform even a cursory review of such information.

**PLAINTIFF DISPUTED THE MISINFORMATION IN TRADS' CONSUMER REPORT**

89. On or about April 28, 2025, Plaintiff disputed the inaccurate information that his SSN was not verifiable with Uber and Checkr.

90. Thereafter, Checkr notified TRADS of Plaintiff's dispute.

91. On or about April 29, 2025, Checkr responded to Plaintiff's dispute stating that it could not verify Plaintiff's SSN.

92. Plaintiff reasonably believes that TRADS failed to perform a reasonable reinvestigation upon receipt of Plaintiff's dispute and correct their inaccurate reporting to Checkr.

93. As direct result of TRADS unreasonable dispute reinvestigation, Checkr continued to report that Plaintiff has an unverifiable SSN to Uber.

94. TRADS failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered April 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the

disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## PLAINTIFF SUSTAINED DAMAGES DUE TO CHECKR'S INACCURATE REPORTING

95. As of the filing of this complaint, Plaintiff's access to the Uber platform has not been reinstated.

96. Plaintiff reasonably believes that Uber refused to reinstate his account as a direct result of TRADS' failure to perform a reasonable reinvestigation upon receipt of Plaintiff's dispute and subsequent failure to correct their inaccurate reporting – specifically that Plaintiff's SSN was not verifiable.

97. Plaintiff is utterly frustrated with continued false reporting.

98. Plaintiff sustained exhaustion from having to continuously provide and confirm his SSN to no avail.

99. Due to Plaintiff's inability to drive with Uber and the emotional distress associated with that, Plaintiff was unable to sleep due to overwhelming stress about how he would cover his upcoming bills.

100. Plaintiff experienced severe emotional distress, anxiety, and sleepless nights about his inability to drive with Uber.

101. Due to TRADS' unreasonable procedures, to bridge the period of unemployment, Plaintiff was forced to work longer hours on lower paying platforms to afford the financial obligations of his household.

102. Plaintiff was out of work from Uber for approximately 9 weeks

103.   The loss of income has resulted in Plaintiff being unable to afford to make his car and insurance payments, incurring late fees. Further, Plaintiff struggles to afford to cover basic costs and essential costs such as bills and rent.

104.   TRADS was negligent in that it owed a duty of care, which it breached, and ultimately caused Plaintiff's damages.

105.   As a result of TRADS' negligence, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities and wages; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to follow Reasonable Procedures to Assure Maximum Possible Accuracy**

106.   Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

107.   TRADS is a "consumer reporting agency" as defined by §1681a(f).

108.   Plaintiff was a "consumer" as that term is defined by §1681a(c).

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

109. The above-mentioned consumer report was a "consumer report" as that term is defined by §1681a(d).

110. TRADS violated §1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of several consumer reports it sold about Plaintiff as well as the information it published within the same.

111. As a result of TRADS' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and advancements in the future; loss of time and money trying to correct the inaccurate reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

112. TRADS willfully violated §1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to §1681n. Alternatively, they were negligent, entitling Plaintiff to recover under §1681o.

113. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from TRADS in an amount to be determined

by the Court pursuant to §§1681n and/or 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation

114. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

115. The FCRA requires consumer reporting agencies to conduct a reasonable reinvestigation when a consumer disputes the completeness or accuracy of information contained in her file, to review all relevant information submitted by the consumer, and to delete or modify information that is inaccurate, incomplete, or unverifiable. 15 U.S.C. § 1681i(a)(1), (4), (5).

116. Defendant TRADS failed to conduct a reasonable reinvestigation of Plaintiff's disputes, failed to review all relevant information provided by Plaintiff, and failed to delete or modify inaccurate, incomplete, or unverifiable information in Plaintiff's file.

117. Instead, Defendant TRADS continued to report Plaintiff's SSN as unverifiable despite Plaintiff's disputes.

118. As a result of TRADS' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and advancements in the future; loss of time and money trying to correct the inaccurate

reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

119. TRADS violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) after Plaintiff notified them that her student loan accounts should not be reported as late/past due, and by failing to maintain reasonable procedures to investigate Plaintiff's dispute(s).

120. TRADS' conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, TRADS was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

121. Plaintiff is entitled to recover attorneys' fees and costs from TRADS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### Negligence

122. Plaintiff repeats and re-alleges the foregoing allegations as if set forth in full herein.

123. Plaintiff believes and alleges that TRADS owed various duties to Plaintiff pursuant to the FCRA.

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

124. Plaintiff alleges that TRADS was negligent when it published to Checkr that Plaintiff's SSN was not verifiable.

125. In order to establish that a defendant is liable for the tort of negligence, the Plaintiff must establish that the defendant owed a duty of care, which it breached, thereby causing the Plaintiff harm.

126. Specifically, TRADS owed a duty to Plaintiff with regard to information it published about Plaintiff to a third-party.

127. TRADS knew or should have known the risks inherent to preparing and selling inaccurate consumer reports, including employment denial and employment loss.

128. TRADS' conduct in publishing inaccurate information to a third-party about Plaintiff constitutes negligence. TRADS had a duty to act as would a reasonable CRA to follow reasonable procedures to assure the maximum possible accuracy of the information it reported concerning Plaintiff. TRADS breached that duty by publishing inaccurate information about Plaintiff to a third-party. As a proximate result of this breach of duty, Plaintiff suffered injuries. Those injuries resulted in monetary damages to Plaintiff.

129. TRADS breached its duty to Plaintiff through its conduct alleged herein in violation of the statutes at issue herein. TRADS failed to follow reasonable procedures to assure the maximum possible accuracy of the information it reported

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.*
Complaint

concerning Plaintiff.

130. Plaintiff asserts that TRADS is the actual and legal cause of Plaintiff's injuries.

131. Plaintiff alleges that as a proximate result of TRADS' negligence, Plaintiff has suffered actual harm and actual damage.

132. Accordingly, Plaintiff has presented a *prima facie* claim for negligence.

133. When a federal district court exercises supplemental jurisdiction over a state law claim which has been joined with a claim subject to federal question jurisdiction, the district court applies the substantive law of the state in which the federal court sits.

134. As a result of TRADS' negligence, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

135. Due to the egregious violations alleged herein, Plaintiff asserts that TRADS breached its duties in an oppressive, malicious, despicable, gross and wantonly negligent manner. As such, said conduct establishes TRADS' conscious disregard for Plaintiff's rights and entitles Plaintiff to recover punitive damages from

*Avila Herrera, Ricardo v. Transunion Risk and Alternative Data Solutions, Inc.* Complaint

TRADS.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and furth relief as the Court may deem appropriate and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted on 16th day of April, 2026.

By: */s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing, NY 11367
T: (718) 701-4605
F: (718) 247-8020
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Ricardo Avila Herrera*